UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 05-168 (JDB) |
| | : | |
| v. | : | |
| | : | |
| LYNWOOD T. DAVIS | : | Motion Hearing: |
| | : | |

## GOVERNMENT'S OPPOSITION TO
## DEFENDANT Davis' MOTION TO SUPPRESS EVIDENCE

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in opposition to the motion of the defendant, Lynwood Davis, seeking to suppress tangible evidence seized pursuant to a search warrant. The defendant also seeks to suppress incriminating statements made absent Miranda warnings. Based upon a review of the files and evidence in this case, the Government concedes that the defendant's statements concerning the gun were obtained absent Miranda warnings and the United States therefore will not seek to use these statements in its case-in-chief. Defendant's statements were also included in the affidavit in support of the search warrant. Nevertheless, because the search warrant affidavit contains sufficient probable cause to support the issuance of the warrant after the tainted statements are excised, defendant's motion to suppress the evidence seized pursuant to that warrant should be denied without a hearing.

### I. FACTUAL BACKGROUND

On April 17, 2005, at approximately 6:00 p.m., officers from the Metropolitan Police Department were dispatched to 1821 Savannah Street, S.E., in response to a call from a female

complainant, the victim in this case, indicating that her former boyfriend had threatened her with a gun. Upon arrival, officers learned from the victim that the defendant had threatened the victim with a firearm as they argued inside the bedroom of his apartment, located at 1821 Savannah Street, S.E., Apartment #103. The victim stated to the officers that as soon as she saw the gun, she fled the apartment. The victim described the firearm to the police, from which the police concluded that it was a black and gray semi-automatic firearm. The victim also provided a description of her assailant, the defendant Lynwood Davis.

Officers entered the building and knocked on the door of the defendants apartment (number 103). A male matching the description provided by the victim walked outside the apartment, closing the door behind him. The victim identified the male as the man who had pointed a gun at her, and at 6:32 p.m. the defendant Lynwood Davis was placed under arrest for assault with a dangerous weapon. The defendant was not in possession of a firearm at the time of his arrest. The officers did not give the defendant any Miranda warnings at that time. At approximately 6:35 p.m., the defendant told officers that he lived in Apartment #103 at 1821 Savannah Street, but refused to consent to a search of his apartment. The defendant, in response to a question by one of the officers, stated that he had a gun in the house and that it belonged to his nephew, who had been killed. He said that, after the victim left the apartment, he put a weapon in the kitchen trash can.

Based on the victim's statements, as well as defendant's statements, officers believed that the defendant was concealing an illegal firearm in his apartment. Officers were posted outside the defendant's residence, Apartment #103, 1821 Savannah Street, S.E., pending an application for the search warrant. The defendant was placed in a squad car. He was transported to the Seventh District station and booked at approximately 8:54 p.m., at which time his was given his Miranda rights. The

defendant refused to answer questions without an attorney present.

The officers prepared an application for a search warrant that set forth in detail the information from the complainant concerning the defendant's pointing of a gun at her in the apartment and the apprehension of the defendant outside his apartment. The search warrant affidavit also included the defendant's statements following his arrest.

At approximately 11:25 p.m., officers executed a search warrant, signed by a Judge of the D.C. Superior Court, for "any illegal firearms, parts of firearms, ammunition, magazines, holsters, gun cleaning kits, pictures, documents or any paraphernalia relating to the ownership or operation of a firearm (Search Warrant at 1). Inside the apartment, officers found a Smith and Wesson .9mm semi-automatic handgun, a .9mm magazine containing eight cartridges, a .9mm cartridge; a tan rock substance found variously on a plate, in small ziplocks and one sock containing six clear plastic bags of the tan rock substance; three small ziplocks containing a weed substance; drug paraphernalia, including empty ziplocks, and a digital scale; as well as mail matter.

On May 12, 2005, defendant Lynwood Davis was indicted for violations of 18 U.S.C. §§ 922(g)(1) and 924(c)(1), respectively, illegal possession of a firearm and ammunition by a convicted felon and using, carrying and possessing a firearm during a drug trafficking offense; 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii), possession with intent to distribute with intent to distribute 50 grams or more of cocaine base; and 21 U.S.C. §§ 844(a), simple possession of a controlled substance.

## II. ARGUMENT

### A search warrant is valid because the untainted portion of the affidavit provided probable cause to support the issuance of the warrant

The affidavit for the search warrant in this case contained statements that were obtained from the defendant in violation of his Miranda rights. Nevertheless, under settled law, the search warrant remains valid if the untainted portions of the affidavit provided sufficient probable cause to support the issuance of the warrant. That requirement is satisfied in this case.

It is well settled that "[w]hen an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue." United States v. James, 418 F.2d 1150, 1151 (D.C. Cir. 1969). See United States v. Trzaska, 111 F.3d 1019, 1026 (2d Cir. 1997) ( "a reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." (quoting United States v. Vasey, 834 F.2d 792, 788 (9th Cir. 1987)).

The untainted portion of the affidavit provided ample probable cause to support issuance of the warrant. It described how on April 17, 2005, Metropolitan police officers responded to a call "for a man with a gun" at Apartment #103, 1821 Savannah Street, SE, in the District. (Search Warrant Affidavit at 1.) The officers were met in front of 1821 Savannah Street by the complainant. (Id.) The complainant stated to officers that she had been inside of 1821 Savannah Street, Apartment #103, when her former boyfriend had pointed a gun at her. (Id.) The complainant explained that she had been inside of the apartment with her former boyfriend,

Lynwood Davis, when an unidentified female entered the apartment, packed some of her possessions in the apartment, and left. (Id. at 1-2). The complainant stated that Mr. Davis became upset at the complainant for causing the unidentified female to leave. (Id. at 2). The complainant stated that she and Mr. Davis became involved in a verbal altercation when Mr. Davis walked to the bedroom. (Id.) The complainant stated that she followed Mr. Davis to the bedroom where Mr. Davis produced a black and grey semi-automatic handgun and pointed it in her direction. (Id.) The complainant stated that when she saw the firearm she fled the apartment. (Id.) The complainant provided officers with a description of Mr. Davis. (Id.)

The affidavit stated that the officers walked inside 1821 Savannah Street, and knocked on the door of apartment #103. (Id.) A male matching the description given by the complainant came out of the apartment and closed the door behind him. (Id.) Officers stopped the individual and walked him outside where the complainant was waiting. (Id.) The complainant positively identified the male as Lynwood Davis, the man who had pointed the handgun at her. (Id.) The affidavit states that at the time of his arrest, Mr. Davis was not in possession of any firearms. (Id.)

After his arrest, Mr. Davis stated to officers that he lived inside of 1821 Savannah Street, Apartment #103. (Id.) Officers asked Mr. Davis for permission to search the apartment and he refused. (Id.)[1]

---

[1] Routine booking questions such as a person's address and requests for permission to search a location are not considered interrogation requiring the giving of Miranda warnings. United States v. Gaston, 357 F.3d 77, 82 (D.C. Cir. 2004) (defendant's statements in the absence of Miranda warnings that he lived at the address and co-owned it with his sisters held admissible as routine booking questions, following Pennsylvania v. Muniz, 496 U.S. 582, 601-02 (1990)); United States v. LeGrone, 43 F.3d 332, 335 (7th Cir. 1994) (requesting consent to search is not interrogation and no Miranda warnings are required).

The only tainted evidence included in the affidavit was Davis's statement to the officers that his nephew had been killed recently, that he was holding the gun, and that after the complainant left he had placed a handgun in the kitchen trashcan. (Search Warrant Affidavit at 2.)

Based on the untainted facts and circumstances presented in the affidavit, the superior court judge would have had ample probable cause to issue the warrant. It is well-established that a magistrate's task in reviewing a search warrant affidavit for probable cause "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

In particular, in cases where statements are made by a victim-eyewitness, those statements are sufficient, standing alone, to establish probable cause. In Gates, the court stated that an informant who gives an explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, even if there is no corroboration, entitles his tip to greater weight than might otherwise be in the case. Gates, 462 U.S. at 234, 241-42. When the statements supporting a search warrant come from a victim-eyewitness courts have been even more supportive. See United States v. Burke, 517 F.2d 377, 381 (2d. Cir. 1975), *cited with approval in* United States v. Laws, 808 F.2d 92, 101-02 (D.C. Cir. 1986) (holding that the requirement that a search warrant must attest to the credibility of the informant and the reliability of the information should not be extended to the identified bystander or the victim-eyewitness to a crime); Adams v. Williams, 407 U.S. 143, 147 (1972) (holding that when the victim of a street

crime seeks immediate police aid and gives a description of the assailant...the subtleties of the hearsay rule should not thwart police action). *Cf.* Brown v. United States, 590 A.2d 1008, 1017 (D.C. 1991) (stating that if a citizen "claims or appears to be a victim of a crime or an eyewitness to a crime, the reliability of his or her information is greatly enhanced") (*quoting* Allen v. United States, 496 A.2d 1046, 1048 (D.C. 1985)). Moreover, victims or eyewitnesses that have just seen the crime being committed are given more credibility than those where some amount of time has passed. United States v. Thompson, 234 F.3d 725, 729 (D.C. Cir. 2000), *cert denied*, 532 U.S. 1000 (2001) (stating that because the witness "just saw" the alleged crime being committed, the recency and proximity of his claimed observation further suggested that it would prove accurate).

As the court explained in United States v. Burke:

> Eyewitnesses by definition are not passing along idle rumor, for they either have been the victims of the crime or have otherwise seen some portion of it. A "neutral and detached magistrate" could adequately assess the probative value of an eyewitness's information because, if it is reasonable and accepted as true, the magistrate must believe that it is based upon firsthand knowledge.

517 F.2d at 381.

In this case, because the complainant had personally seen the gun in the defendant's apartment, had just left the apartment where the defendant pointed the handgun at her when the police arrived on the scene, and the defendant came out of the apartment without the gun after the officers knocked on his door, the search warrant was supported by probable cause.

### III. NOTICE OF ADDITIONAL FACTS

In addition to the above, the Government wishes to advise the Court that during a recent review of the evidence, it learned that officers did not knock before using a battering ram to enter

the defendant's apartment. Under the circumstances, however, knocking would have been futile because the officers knew that no one was inside the apartment. Both the victim and the defendant told officers that the apartment was empty. When the defendant exited the apartment and was arrested, officers who had knocked on the defendant's door watched as the defendant closed the door behind him, causing it to lock. Officers were posted to guard the single entrance to the apartment after the defendant left the apartment. Later, the defendant indicated to officers that entry into the apartment would require his key, which he held. While knocking before entering would be preferable--and, indeed, would be required in most circumstances--under the facts known to the officers executing the warrant, their belief that the apartment remained empty after the defendant's exit was reasonable--and entry without knocking was therefore reasonable. The Supreme Court has held that to justify a no-knock entry, police officers must have "a reasonable suspicion that knocking and announcing their presence, under the circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." United States v. Ramirez, 523 U.S. 65, 70, 118 S. Ct. 992, 996 (1998) (finding no violations of the Fourth Amendment and holding that police officers, who did not knock before entering, were not held to a higher standard under the Fourth Amendment because there was destruction to property), quoting Richards v. Wisconsin, 520 U.S. 385, 394, 117 S. Ct. 1416, 1421 (1997). The Court of Appeals for the District of Columbia, following Richards, has similarly held that entry without knocking is not necessarily in violation of the Fourth Amendment where the police have a reasonable suspicion that knocking and announcing their presence would, under the circumstances, be dangerous or futile, or, for example, lead to the destruction of evidence. *See also,* Ronald C. Artis v. United States,

802 A.2d 959, 968-971 (2002) (*aff'g* Superior Court decision that, among other things, defendant lacked standing to challenge any violations of knock and announce rule). Based on the foregoing, the actions of the officers should be deemed reasonable, denying therefore the defendant any ground for objection.

## IV. CONCLUSION

For the foregoing reasons the government respectfully requests that defendant Davis' motion to suppress evidence be denied without a hearing.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney

Bruce G. Ohr,
Chief
Organized Crime and
    Racketeering Section
United States Department of Justice
1301 New York Ave, NW - 7th Floor
Washington, DC 20530
(202) 514-3595

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served by Electronic Filing upon the attorney for the defendants, Charles F. Daum, Esq., 736 5th Street, N.E., Washington, D.C. 20002, charlesdaum@verizon.net.

　　　　　　　　　　　　　　　　　/S/
　　　　　　　　　　　　　　　　Bruce G. Ohr