UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LYNWOOD T. DAVIS,<br><br>Defendant. | CRIMINAL ~~Civil~~ Action No. 05-168 (JDB) |

ORDER

Defendant in this criminal case has filed a motion to suppress evidence seized from his apartment in the wake of his arrest. He argues that the search warrant affidavit lacked probable cause to support the issuance of the warrant once information that the government admits was obtained in violation of his Miranda rights is excluded. He also contends that the government violated his Fourth Amendment rights by entering the apartment without first knocking and announcing their presence. For the reasons stated below, the motion is denied.

BACKGROUND

On April 17, 2005, at approximately 6:00 p.m., police officers were dispatched to 1821 Savannah Street, S.E., Apartment 103, in response to a call from a female complainant that a man had pointed a gun at her. When the officers arrived at the scene, the complainant was standing outside the apartment building. The complainant gave the officers her name, and told the officers that she had been inside the apartment with her former boyfriend when an unidentified female entered the apartment, packed some of her possession, and left. The

1

former boyfriend then became upset at the complainant for causing the unidentified female to leave. Following a verbal altercation, the former boyfriend walked into the bedroom. According to the complainant, she followed him into the bedroom, at which point he produced a black and grey semi-automatic handgun and pointed it in her direction. The complainant told the officers that when she saw the firearm, she fled the apartment. The complainant provided the officers with a description of the former boyfriend.

Officers proceeded to walk inside the apartment building and knock on the door of apartment 103. A male matching the description given by the complainant came to the door, exited the apartment, and closed the door behind him. Officers walked the individual outside to where the complainant was waiitng. The complainant identified the individual as defendant Lynwood Davis, the man who she claimed had pointed the handgun at her. At 6:32 p.m., the officers placed defendant under arrest for assault with a dangerous weapon. Defendant was not in possession of any firearm at the time of his arrest. The officers did not give defendant any Miranda warnings at that time.

Davis admitted to officers that he lived in Apartment 103, but refused to consent to a search of the apartment. He told the officers that his nephew had been killed recently and he was keeping his nephew's gun. He also stated that he had placed the handgun in the kitchen trashcan after the complainant left the apartment. The officers chose to seek a search warrant for the apartment. Officers were posted outside the apartment pending an application for the search warrant, and the defendant was placed in a squad car and transported to the station house, where he was given his Miranda rights. Defendant refused at the station house to answer any questions without an attorney present.

2

The officers completed an affidavit for a search warrant that contained the facts set out above, including the defendant's statements following his arrest. The officers explained in the affidavit that based on the statements of the complainant and the defendant, the officers believed that an illegal firearm was being concealed inside of the apartment. Gov. Mem. Opp. Mot. Suppress ("Gov. Mem."), Ex. 1 (Affidavit. at 2). A judge of the D.C. Superior Court signed the search warrant. After the complainant told the officers that the apartment was empty, the officers used a battering ram to enter the apartment.[1] Inside the apartment, the officers found several items including a Smith and Wesson .9 mm semi-automatic handgun, ammunition, a tan rock substance, a weed substance, and drug paraphernalia, including a digital scale.

On May 12, 2005, defendant was indicted for illegal possession of a firearm and ammunition by a convicted felon, carrying and possessing a firearm during a drug trafficking offense, possession with intent to distrute 50 grams or more of cocaine base, and possession of a controlled substance. Several weeks later, defendant filed a motion to suppress the oral statements he allegedy made to police officers prior to being read his Miranda warnings. He also filed a separate motion to suppress the evidence recovered from defendant's apartment, on the theory that the affidavit for the search warrant contained statements that were obtained from the defendant in violation of his Miranda rights, and the untainted information in the affidavit does not provide an independent basis for a finding of probable cause to issue the warrant.

On July 29, 2005, the United States submitted opposition papers in which it conceded that the defendant's statements concerning the firearm were obtained without a proper Miranda

---

[1] The United States contends that defendant also told the officers that the apartment was empty. Counsel for defendant stated at a hearing that their position was that defendant made no such statement, or that any such statement was coerced.

3

warning, and represented that the United States would not seek to use those statements in its case-in-chief. The United States nonetheless opposed the motion to suppress the evidence discovered in the defendant's apartment, contending that the affidavit otherwise contained sufficient probable cause to issue the warrant. The United States also advised the Court that upon a review of the evidence, it discovered that the officers did not knock before using a battering ram to enter the defendant's apartment. The United States argued, however, that knocking would have been futile because the officers knew no one was in the apartment. On August 4, 2005, defendant filed reply papers in which he argued that the evidence found in the apartment should be suppressed for the alternative reason that the officers violated the knock-and-announce requirement of the Fourth Amendment. The Court held a hearing on August 9, 2005, at which defendant and the United States expressed their respective views that the motion could be resolved on the pleadings without the need for an evidentiary hearing.

## ANALYSIS

The parties agree that the motion to suppress defendant's statements to the officers has been rendered moot by the United States' representation that it will not use statements concerning the firearm in its case-in-chief. The parties continue to contest the motion to suppress the evidence found in the apartment. Defendant now rests this motion on two legal arguments: that the officers' affidavit does not provide probable cause for a search warrant independent of the information obtained in violation of the defendant's Miranda rights, and that the officers entered defendants' apartment without knocking and announcing their presence in violation of the Fourth Amendment.

4

I.    **The Affidavit for the Search Warrant**

The United States concedes that the affidavit for the search warrant contained statements that were obtained from defendant in violation of his Miranda rights. When "an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue." United States v. James, 418 F.2d 1150. 1151 (D.C. Cir. 1969). Applying this rule to the affidavit in this case, the Court concludes that the untainted portion of the affidavit provides probable cause for the issuance of the search warrant.

The untainted portions of the affidavit describe the officers responding to a call about "a man with a gun" at an apartment building in Southeast Washington D.C. Gov. Mem.. Ex. 1 (Affidavit, at 1). When the officers arrived at the scene, they were met by the complainant, who explained that she and her former boyfriend had been inside Apartment 103 when her former boyfriend had become upset at her. See id. at 1-2. She told the officers that they had engaged in a verbal altercation, after which the former boyfriend walked into the bedroom. See id. at 2. When she followed him into the bedroom, he produced a semi-automatic handgun and pointed it in her direction. See id. She provided the officers with a description of the former boyfriend. See id. When officers walked into the apartment building and knocked on the door of the apartment, the defendant opened the door. He matched the description the complainant had provided. The officers brought defendant outside to where the complainant was waiting, and she

5

positively identified him as the man who had pointed a handgun at her. See id.[2]

This detailed account of a victim and eyewitness describing a firearm offense that had occurred in an apartment is sufficient to establish probable cause for a search warrant of the apartment. "There is no precise formula for the probability required" for a finding of probable cause. United States v. Riley, 351 F.3d 1265, 1267 (D.C. Cir. 2003). "Somewhere between 'less than evidence which would justify . . . conviction' and 'more than bare suspicion,' probable cause is satisfied. . . . The precise point is indeterminate." United States v. Prandy-Binett, 995 F.2d 1069, 1070 (D.C. Cir. 1993). The Court should rely on a "totality-of-the-circumstances analysis" in assessing probable cause. Illinois v. Gates, 462 U.S. 213, 234 (1983); Riley, 351 F.3d at 1267-68.

Defendant maintains that there were insufficient indicia of the reliability of the complainant to establish probable cause on the basis of her statement alone. However, unlike "an anonymous tip," which "alone seldom demonstrates the informant's basis of knowledge or veracity," the reputation of a known informant can be "assessed" and the informant "can be held responsible if her allegations turn out to be fabricated." Florida v. J.L., 529 U.S. 266, 270 (2000) (quotation omitted).[3] Thus, "courts have inferred reliability when the informant is an inadvertent

---

[2] The Court does not find it necessary at this time to decide whether the defendant's admission to the officers that he lived in the apartment was a statement in response to a "routine booking question reasonably related to the police's administrative concerns" and therefore outside the rule of Miranda. United States v. Gaston, 357 F.3d 77, 82 (D.C. Cir. 2004).

[3] See also United States v. Christmas, 222 F.3d 141, 144 (4th Cir. 2000) ("[C]ourts have had no difficulty distinguishing between cases involving face-to-face encounters with informants and cases involving anonymous tipsters."); Easton v. City of Boulder, 776 F.2d 1441, 1449 (10th Cir. 1985) ("[W]hen examining informant evidence used to support a claim of probable cause for a warrant . . . the skepticism and careful scrutiny usually found in cases involving informants, sometimes anonymous, from the criminal milieu, is appropriately relaxed if the informant is an

6

witness to criminal activity, either as a bystander or victim." United States v. Lewis, 808 F.2d 92, 101 (D.C. Cir. 1986); see Gates, 462 U.S. at 234 ("[I]f an unquestionably honest citizen comes forward with a report of criminal activity--which if fabricated would subject him to criminal liability--we have found rigorous scrutiny of the basis of his knowledge unnecessary."); United States v. Blount, 123 F.3d 831, 835 (5th Cir. 1997) ("[A]bsent specific reasons for police to doubt his or her truthfulness, an ordinary citizen, who provides information to police at a crime scene or during an ongoing investigation, may be presumed credible without subsequent corroboration.").

The complainant here came forward to police, identified herself, and presented a specific report of a recent assault against her with a firearm in the apartment. She provided a description of the defendant to the police, and the individual who exited the apartment matched that description. The officers at the scene had "an opportunity to observe [the complainant's] demeanor and assess [her] credibility," and she "also exposed [herself] to potential criminal liability for filing a false report." United States v. Dequasie, 373 F.3d 509 (4th Cir. 2004). Defendant does not cite any facts that should have led the officers to doubt the complainant's credibility, or explain the additional corroborating evidence that the officers should have gathered before seeking a warrant.

Although defendant complains that there was only "one witness" to the alleged crime, it will often happen, particularly in the domestic violence setting, that assaults and threats occur behind closed doors, outside the view of potential eyewitnesses. See Def. Mem. at 4. To deny police officers a search warrant when presented with a credible and face-to-face allegation of an

---

identified victim or ordinary citizen witness").

7

assault in that situation is an untenable result that could endanger lives. "The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate." Beauchamp v. City of Noblesville, Ind., 320 F.3d 733, 743 (7th Cir. 2003). As indicated, defendant does not identify any cause for suspicion here, or any reasonable additional investigation the officers failed to conduct. Indeed, th eofficers were cautious and responsible, posting a guard at the apartment and securing a search warrant based on a truthful affidavit.

Accordingly, the Court concludes that the search warrant affidavit contains sufficient probable cause to support the issuance of the warrant independent of the portions that offend Miranda. Defendant's motion to suppress the evidence discovered in the apartment due to an absence of probable cause is therefore denied.

## II. The Knock and Announce Rule

Defendant argues in the alternative that the evidence found in the apartment should be suppressed because the officers entered the apartment without knocking and announcing their presence in violation of the Fourth Amendment. Although the Supreme Court has held that the Fourth Amendment incorporates the common law requirement that officers entering a dwelling must knock on the door and announce their identity and purpose before attempting a forcible entry, it has also identified exceptions to the rule in certain situations. "In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of

8

evidence." Richards v. Wisconsin, 520 U.S. 385, 394 (1997).

Given the circumstances here, knocking would have been "futile" under the Richards rule. Officers were present when defendant exited the apartment. The officers saw the defendant close the door behind him, causing it to lock. Gov. Opp'n Mem. at 8. Officers were posted to guard the single entrance to the apartment after defendant exited. Before the police entered the apartment, the complainant informed the police that no one was inside the apartment. It is difficult to imagine a clearer example of a scenario where a knock would be "futile" than one where all of the evidence available to the officers at the time pointed conclusively to the apartment not having anyone inside to answer a knock. The failure of the officers to knock and announce before entering the apartment therefore did not violate the defendant's Fourth Amendment rights.

## CONCLUSION

For the reasons stated above, defendant's motion to suppress evidence obtained as a result of the search warrant of his apartment is denied.

Copies to:

Bruce G. Ohr
Lincoln S. Jalelian
Tonya Sulia
Amy Jeffress
U.S. Department of Justice
1307 New York Avenue, NW
7th Floor
Washington, DC 20005
(202) 514-3595
Email: bruce.g.ohr@usdoj.gov
    *Counsel for United States*

Charles F. Daum
736 Fifth Street, NE
Washington, DC 20002
(202) 546-8886
Fax: (202) 546-0330
Email: charlesdaum@verizon.net

Michelle M. Peterson
Federal Public Defender for D.C.
625 Indiana Avenue, NW
Suite 550
Washington, DC 20004-2923
(202) 208-7500
Fax: (202) 208-7515
Email: shelli_peterson@fd.org
    *Counsel for defendant*